EDWIN G. EPPENBACH, Appellant, *v.* WILLIAM EPPENBACH (No. 2) and Another, Defendants, Impleaded with LUCILLE EPPENBACH and Another, Respondents.

Second Department, May 7, 1926.

Mortgages — foreclosure — subrogation of third mortgagee — said third mortgage was assigned to plaintiff but assignment was not recorded — mortgagor refused to make payments on second mortgage in suit and plaintiff made payments under agreement by mortgagee to assign — assignment of third mortgage to plaintiff made before payments by him on second mortgage — property was conveyed to third person — purchaser on application to second mortgagee was shown agreement to assign second mortgage for $2,050 and purchased on assumption that mortgage was reduced — plaintiff was not volunteer in making payments on mortgage in suit and is entitled to be subrogated to rights of second mortgagee — estoppel — plaintiff not estopped by agreement with mortgagee which was shown to purchaser.

The plaintiff, to whom was assigned a third mortgage that was recorded in July, 1923, was not a mere volunteer in making payments on a second mortgage which was subsequently assigned to him and is being foreclosed in this proceeding,

since it appears that while the assignment of the third mortgage to the plaintiff was undated and was not recorded, the evidence clearly establishes that it was made before the plaintiff made any payment on the second mortgage; that the mortgagor refused to pay on the second mortgage and so notified the plaintiff. The plaintiff, under the circumstances, had the right to protect himself as junior mortgagee by making payments on the second mortgage, and, therefore, he is entitled to be subrogated to the rights of the second mortgagee as to all payments made by him prior to the assignment of said mortgage to him and as to the amount paid by him at the date of the assignment.

The plaintiff is entitled to assert his right of subrogation as against a subsequent purchaser of the property, notwithstanding that on application by the purchaser to the second mortgagee, which application was made after the second mortgagee had agreed to assign the second mortgage but before the assignment was made, the second mortgagee showed the purchaser's attorney the agreement to assign the second mortgage to the plaintiff for the sum of $2,050, which was the amount remaining due after the plaintiff had made the payments on behalf of the mortgagor for the purpose of protecting his junior mortgage.

Said agreement between the second mortgagee and the plaintiff for an assignment of the second mortgage did not constitute an estoppel against the plaintiff in favor of the purchaser, since said agreement was not made with the intention of influencing the conduct of the purchaser, nor did the plaintiff authorize the mortgagee to show the agreement to the purchaser.

If the purchaser's agent had applied to the second mortgagee for a statement of the amount due on the second mortgage, and the mortgagee had simply given him the reduced amount, the plaintiff might have been bound by the declaration of the second mortgagee as predecessor in interest, but the second mortgagee did not make a statement as to the amount due and only showed the agreement for the assignment to the purchaser's agent with a statement that the agreement would be sufficient to show the amount still due on the mortgage, for, under the circumstances, the statement by the second mortgagee was simply to the effect that the amount shown in the agreement was the amount that the plaintiff would have to pay in order to obtain an assignment of the mortgage.

APPEAL by the plaintiff, Edwin G. Eppenbach, from a judgment of the County Court of the county of Queens in favor of the defendants, entered in the office of the clerk of said county on the 29th day of July, 1925, upon the decision of the court rendered after a trial at a Special Term thereof.

*Frederick S. Rauber,* for the appellant.

*Thomas E. Murray, Jr.,* for the respondent Lucille Eppenbach.

*William Klein,* for the respondent Herbert E. Jockers.

YOUNG, J. The action is to foreclose a mortgage covering the property in question. On March 17, 1922, William Eppenbach (No. 2), being the owner of this property, on the advice of his father, William Eppenbach (No. 1), conveyed it to his wife without consideration in order to avoid a judgment against him or to get better terms from the judgment creditor. At the time of the conveyance, the property was incumbered by several mortgages,

and the judgment above mentioned, which was for $2,000, was recovered against the husband as a result of an automobile accident. This judgment was subsequently paid off with moneys advanced by the father and plaintiff, and a mortgage which is dated May 19, 1923, was made to the father to secure this loan. This mortgage was subsequently assigned by the father to the plaintiff in the early part of July, 1923, according to plaintiff's testimony. The assignment bears no date and was not recorded. The mortgage assigned was recorded on July 19, 1923. The mortgage sought to be foreclosed in this action bears date of April 12, 1923, and was recorded on the next day. It was payable in monthly installments of $200 and interest. All the installments of principal and the interest were paid by plaintiff until May 20, 1924, when the York Mortgage Corporation, the mortgagee, gave the plaintiff an agreement to assign the bond and mortgage upon making certain payments. As appears by the recitals in that instrument, the principal sum of $4,250 had at that time been reduced to $2,050; that is, plaintiff had paid $2,200 on account of the principal.

All these payments by plaintiff were made with his own money and no payments were made by the defendants Lucille or William Eppenbach (No. 2). Plaintiff testified that these payments were made by him because his brother, William Eppenbach (No. 2), told him that " he was not going to make any more * * * payments * * * because the house was in his wife's name; * * * he had had trouble with her;" that he made these payments to protect himself because he held the third mortgage. On July 10, 1924, the defendant Lucille Eppenbach conveyed the premises in question to the defendant Herbert E. Jockers. The contract for that sale recited that it was made subject to a first mortgage of $4,000, held by the Title Guarantee and Trust Company, and a purchase-money mortgage of $2,000. The deed, subsequently delivered, is subject to the $4,000 mortgage and a second mortgage for $2,000, held by William Eppenbach. The contract bears date June 11, 1924, and the deed July 10, 1924. Before closing title, Jockers' agent called with Lucille Eppenbach on one of the attorneys of the York Mortgage Corporation for a statement showing the amount due on the mortgage in question, and was handed a copy of the agreement for assignment of the mortgage to plaintiff, and Lucille Eppenbach was told by the attorney that this agreement would be sufficient to show that $2,050 was due on the second mortgage. This agreement was produced on the closing on July tenth, and the defendant Jockers' attorney testified that he relied solely on that statement that the mortgage was reduced to $2,050 with interest, and retained that sum; that on July 11, 1924, after closing

title, he communicated with the mortgage corporation concerning the satisfaction of the mortgage, and they requested him to communicate with plaintiff, which he did, and was informed by him that he would not be the owner of the mortgage until he had paid the note to the mortgage corporation; that on July seventeenth he discovered the assignment of the mortgage and then tendered the $2,050 and interest to plaintiff, which plaintiff refused and demanded the whole amount of the mortgage and interest from its date.

Plaintiff testified concerning this transaction that he received a letter from Jockers' attorney and called him up, and the attorney told him that he wanted to satisfy the second mortgage. Plaintiff went down to see him that night and he told plaintiff that he had retained $2,050 plus the interest and plaintiff told him that he had made a mistake; that he, plaintiff, was the holder of the $4,250 mortgage plus interest. The attorney replied that he thought it was reduced to $2,050, and that he guessed he would have to see Lucille Eppenbach and get that money back. Plaintiff met Jockers' attorney once or twice after that, and finally he went to see him. and asked him if he was going to make the payment on the mortgage, to which he replied that he guessed he was caught.

The learned county judge found that the payments made by plaintiff were made without any request by the owner of the equity, and that, at that time, he was under no obligation to make such payments and had no lien which he was required to protect; that these payments, therefore, were voluntarily made, and he was not, therefore, entitled to subrogation; that, as a tender of the amount due had been made before the action was brought, the plaintiff was entitled only to that amount, upon receipt of which the mortgage must be satisfied and discharged of record. Judgment was entered in accordance with this decision, and plaintiff has appealed.

I think this judgment should be reversed. It seems to me that, on the evidence here, plaintiff was clearly entitled to subrogation. He was not, in my opinion, a mere volunteer, but, at the time of the payments made by him, he was the holder of a junior incumbrance, namely, the $2,000 mortgage assigned to him by the father of William Eppenbach (No. 2). It is true that the assignment of mortgage bears no date and was not recorded, but plaintiff's testimony is clear that it was made in July, 1923. This was before the payments made on the mortgage. Plaintiff's reason why he made the payments — because his brother had refused to make them, and in order to protect this mortgage for $2,000 held by him — is an entirely reasonable and probable

explanation of the transaction. Indeed, there is no evidence to dispute it, nor to show in the slightest degree that he intended to make these payments voluntarily, as a gift. In my opinion, the learned county judge was not warranted in disbelieving this testimony. Furthermore, the equities of this case are entirely with plaintiff, especially between him and the defendant Lucille Eppenbach. She paid nothing for this property and nothing on the mortgage, and, therefore, can sustain no injury by the recovery by plaintiff of the full amount he has actually paid for this mortgage.

As between the defendant Jockers and plaintiff, however, a somewhat more serious question is presented. It is urged by the respondent Jockers that the recital in the agreement between plaintiff and the York Mortgage Corporation of the reduction of the mortgage to $2,050 constitutes an estoppel on plaintiff to claim any further or greater sum. In order to constitute an estoppel, the act or admission made by the person sought to be estopped must have been made with the intention of influencing the conduct of another, or under such circumstances that he had reason to believe that they would influence his conduct inconsistent with the title he proposed to set up; that the other party has acted upon such act or declaration or has been influenced thereby and will be prejudiced by allowing its truth to be disproved. (1 Weed's Practical Real Estate Law, 440.)

Appellant, however, contends that this agreement was never made by plaintiff with any intention that it should be exhibited to any third party, and that it could not, therefore, have been · made with the intention of influencing the defendant Jockers. I think this contention is sound. This agreement was not intended to be and never was put on record, and concerned only the parties thereto. Of course, at the time it was exhibited to defendant's agent, the York Mortgage Corporation still held the mortgage, the assignment not having been then made. Had defendant's agent applied to the mortgage corporation for a statement of the amount due, and the corporation had replied simply by giving the reduced amount, it is quite likely that plaintiff would be bound by the declaration of his predecessor in interest, but that is not this case. The statement made was simply that the agreement then exhibited and a copy given to defendant's agent would be sufficient to show the amount due. On the closing of title, this copy of the agreement was produced and it was plain notice to the defendant that some one other than the corporation had an interest in that mortgage. He was not, therefore, in my opinion, justified in relying solely upon the recital of the amount due contained in the agreement, but was bound for his own protection

to make inquiry of plaintiff as to the true situation. This recital was in effect simply a statement of the amount which plaintiff would have to pay in order to obtain an assignment, and was made solely for the purposes of that agreement between the plaintiff and his assignor.

The judgment of the County Court of Queens county should be reversed on the law and the facts, and judgment directed in favor of the plaintiff for the foreclosure of the mortgage in question for the full amount of principal and interest from its date, with costs in this court and in the court below. The findings of fact of the County Court of Queens county, numbered ninth, tenth, nineteenth, twentieth and twenty-first, and all the conclusions of law found by it, except that numbered first, are reversed, and this court finds the findings of fact proposed by plaintiff numbered seventh and eighth and all of plaintiff's proposed conclusions of law.

KELLY, P. J., RICH, MANNING and LAZANSKY, JJ., concur.

Judgment of the County Court of Queens county reversed on the law and the facts, and judgment directed in favor of the plaintiff for the foreclosure of the mortgage in question for the full amount of principal and interest from its date, with costs in this court and in the court below. The findings of fact of the County Court numbered ninth, tenth, nineteenth, twentieth and twenty-first, and all the conclusions of law found by it, except that numbered first, are reversed; and this court finds the findings of fact proposed by plaintiff numbered seventh and eighth, and all of plaintiff's proposed conclusions of law.